IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IN RE:                                              :
                                                    :
                                                    :   Civ. No. 16-1078-LPS
Motions Seeking Access to 2019 Statements.          :
                                                    :

Peter John Sacripanti, Esq., John J. Calandra, Esq., and Darren Azman, Esq., of McDERMOTT
WILL & EMERY LLP, New York, NY.

Justin K. Edelson, Esq., of POLSINELLI PC, Wilmington, DE.

> *Attorneys for Appellant Honeywell International Inc.*


K. Elizabeth Sieg, Esq., of MCGUIREWOODS LLP, Richmond, VA.

Christian J. Singewald, Esq., of WHITE & WILLIAMS LLP, Wilmington, DE.

> *Attorneys for Appellant Ford Motor Company.*


Mark Minuti, Esq., of SAUL EWING LLP, Wilmington DE.

Adam H. Isenberg, Esq., of SAUL EWING LLP, Philadelphia, PA.

> *Attorneys for Appellee Owens Corning Sales, LLC, f/k/a Owens Corning, and its*
> *Affiliated Reorganized Debtors.*


Ann C. McMillan, Esq., Kevin C. Maclay, Esq., and Todd E. Phillips, Esq., of CAPLIN &
DRYSDALE, CHARTERED, Washington DC.

Anthony M. Saccullo, Esq., and Thomas H. Kovach, Esq., of A.M. SACCULLO LEGAL, LLC,
Bear, DE.

> *Attorneys for Appellees/Cross-Appellants Trust Advisory Committees.*


James L. Patton, Jr., Esq., Edwin J. Harron, Esq., and Sharon M. Zieg, Esq., of YOUNG
CONAWAY STARGATT & TAYLOR, LLP, Wilmington, DE.

> *Attorneys for Appellees/Cross-Appellants Future Claimants' Representatives.*

Joseph D. Frank, Esq., and Reed Heiligman, Esq., of FRANKGECKER LLP, Chicago, IL.

*Attorneys for Appellee/Cross-Appellant The Combustion Engineering 524(g) Asbestos PI Trust Advisory Committee.*

Nicholas E. Skiles, Esq., of SWARTZ CAMPBELL LLC, Wilmington, DE.

Cory L. Andrews, Esq., and Mark S. Chenoweth, Esq., WASHINGTON LEGAL FOUNDATION, Washington DC.

*Attorneys for Amicus Curiae Washington Legal Foundation.*

Raeann Warner, Esq., of JACOBS & CRUMPLAR, P.A., Wilmington, DE.

Robert S. Peck, Esq., of CENTER FOR CONSTITUTIONAL LITIGATION, P.C., New York, NY.

*Attorneys for Amicus Curiae The American Association for Justice.*

---

## OPINION

Wilmington, Delaware
March 27th, 2018

**STARK, U.S. District Judge:**

This appeal relates to nine Delaware bankruptcy cases, each commenced in connection with the respective debtors' asbestos-related liabilities ("Consolidated Cases"). The appeal arises from the most recent attempt to access thousands of exhibits ("2019 Exhibits") that were submitted to the Bankruptcy Court pursuant to Federal Rule of Bankruptcy Procedure 2019 in connection with administering the nine asbestos bankruptcies. Consistent with a series of orders entered by the Bankruptcy Court in implementing Rule 2019 (the "2019 Orders"), the 2019 Exhibits are in the possession of the Clerk of the Bankruptcy Court, but are not available on the public docket.

Appellant Honeywell, joined by Ford (together, "Appellants") filed a request (A1-154)[1] in each of the Consolidated Cases seeking unlimited access to the 2019 Exhibits, even though all but one of the nine Consolidated Cases are closed.[2] Appellants contend that they, like any entity, are entitled to indefinite access to the 2019 Exhibits, to use them for any purpose, including, but not limited to, investigating potential fraud in the claims process and advancing Appellants'

---

[1] The appendix in support of Appellants' opening brief (D.I. 17) is cited herein as "A__." The appendix in support of Appellees'/Cross-Appellants' Opening Brief (D.I. 23) is cited herein as "AP__." References to documents filed in the Consolidated Cases will be cited herein as follows: for *In re ACandS, Inc.*, Case No. 02-12687, as "*ACandS* D.I. __;" for *In re Armstrong World Indus., Inc.*, Case No. 00-04471, as "*AWI* D.I. __;" for *In re Combustion Eng'g, Inc.*, Case No. 03-10495, as "*CE* D.I. __;" for *In re The Flintkote Co.*, Case No. 04-11300, as "*Flintkote* D.I. __;" for *In re Kaiser Aluminum Corp.*, Case No. 02-10429, as "*KA* D.I. __;" for *In re Owens Corning*, Case No. 00-03837, as "*OC* D.I. __;" for *In re U.S. Mineral Prods. Co.*, Case No. 01-02471, as *USMP* D.I. __;" for *In re USG Corp.*, Case No. 01-02094, as "*USGC* D.I. __;" and for *In re W.R. Grace & Co.*, Case No. 01-01139, as *WRG* D.I. __."

[2] Of the nine Consolidated Cases, the dockets reflect that only the jointly administered Chapter 11 cases of *In re W.R. Grace & Co.* remain open. As of March 6, 2018, there were five remaining unresolved non-asbestos claims to be administered by the sole remaining debtor in those cases. (*See WRG* D.I. 33007 at 3)

1

legislative and lobbying activities. Appellees – including various Trust Advisory Committees[3] ("TAC") and the Future Claimants Representatives[4] ("FCR") (collectively, "Appellees") – opposed the request, on grounds including that Appellants' admitted purposes for requesting access to the 2019 Exhibits are improper and, anyway, the 2019 Exhibits are useless for such purposes. (*See* A178)[5]

On November 8, 2016, the Bankruptcy Court entered its opinion and order in each of the Consolidated Cases, granting Appellants limited access to the 2019 Exhibits for the purpose of investigating potential fraud in the claims process; the Bankruptcy Court imposed additional limitations on access as well. *In re Owens Corning*, 560 B.R. 229 (Bankr. D. Del. 2016) (hereinafter, "Access Decision"). Because Appellants want unlimited access to the 2019 Exhibits, they have appealed the Bankruptcy Court's decision "to the extent that the Opinion and Order restrict Appellants' ability to access and use the 2019 Exhibits." (D.I. 16 at 1) Appellees

---

[3] The Trust Advisory Committees include: The North American Refractories Company Asbestos Personal Injury Settlement Trust Advisory Committee, ACandS, Inc. Asbestos Settlement Trust Advisory Committee, Armstrong World Industries, Inc. Asbestos Personal Injury Trust Advisory Committee, the Combustion Engineering 524(g) Asbestos PI Trust Advisory Committee, the Flintkote Company Asbestos Personal Injury Trust Advisory Committee, Kaiser Aluminum & Chemical Corporation Asbestos Personal Injury Trust Advisory Committee, Owens Corning/Fibreboard Asbestos Personal Injury Trust Advisory Committee, United States Gypsum Asbestos Personal Injury Trust Advisory, and WRG Asbestos Personal Injury Trust Advisory Committee.

[4] The Future Claimants Representatives include: James J. McMonagle, the Future Claimants' Representative for the Flintkote Asbestos Trust, and Lawrence Fitzpatrick, the Future Claimants' Representative for the North American Refractories Company Asbestos Personal Injury Settlement Trust.

[5] Appellants moved for an order authorizing "any entity . . . including [Appellants] . . . [to] access, inspect, copy and receive copies of . . . any and all of the 2019 Exhibits . . ." (A18, ¶ 2) Appellants sought access for any purpose, including "to ferret out invalid or fraudulent asbestos claims." (A5, ¶ 10) Appellants argue that their purposes are irrelevant and no limitations on use of the information may be imposed. (*See* A429, 10/14/16 Hr'g. Tr. at 98)

have cross-appealed on the basis that the Bankruptcy Court should have denied Appellants

access to the 2019 Exhibits altogether. (*See* D.I. 22)

For the reasons stated below, the Court will affirm the Bankruptcy Court's Access

Decision.

## I.      BACKGROUND

### A.      The Parties and the 2019 Orders

Appellant Honeywell is a diversified technology and manufacturing company which has

been a global supplier of automotive brake friction materials and aftermarket brake products.

Honeywell is obligated to fund all distributions which the North American Refractory Company

("NARCO") Trust[6] makes, up to capped amounts (which exceed $100 million annually), and all

of the NARCO Trust's expenses. (A20, ¶¶ 3-5) Appellant Ford is an automobile manufacturing

company. It has been named as a defendant in asbestos cases by plaintiffs claiming to have

worked with or around chrysotile-containing brake pads. Ford joined Honeywell's motion for

access.

Appellants filed a motion seeking access to all 2019 Exhibits submitted in the nine

Consolidated Cases. All nine of the Consolidated Cases began in the 2000s. Under the version

of Bankruptcy Rule 2019 in effect at that time, a 2019 Statement (when required) needed to

contain certain identifying information (e.g., name and address, nature and amount of claim or

interest, etc.) about the creditors and equity holders being represented by the entity preparing the

---

[6] NARCO, a Honeywell related company, filed for bankruptcy in 2002 to resolve its asbestos-related liabilities related to refractory and other asbestos-containing products. NARCO's plan of reorganization was confirmed in 2007. The plan established a § 524(g) asbestos trust, the "NARCO Trust." All present and future asbestos claims against NARCO are channeled to the NARCO Trust, which is responsible for processing these claims subject to terms and conditions set forth in the Trust Distribution Procedures.

2019 Statement (e.g., a law firm). *See* Fed. R. Bankr. P. 2019 (amended 2011). Specifically,

Rule 2019 provided:

> every entity or committee representing more than one creditor . . .
> shall file a verified statement setting forth (1) the name and address
> of the creditor . . . ; (2) the nature and amount of the claim or
> interest and the time of acquisition thereof unless it is alleged to
> have been acquired more than one year prior to the filing of the
> petition; (3) a recital of the pertinent facts and circumstances in
> connection with the employment of the entity . . . , and (4) with
> reference to the time of the employment of the entity, . . . the
> amounts of claims or interests owned by the entity, . . . the times
> when acquired, the amounts paid therefor, and any sales or other
> disposition thereof. The statement shall include a copy of the
> instrument, if any, whereby the entity . . . is empowered to act on
> behalf of creditors . . .

Compliance with Rule 2019 in mass tort cases presents significant logistical challenges,

particularly for law firms that represent large rosters of clients. These firms were required to

prepare statements ("Rule 2019 Statements") and Exhibits with the information listed in the

Rule.

In 2004 and 2005, Bankruptcy Judge Judith K. Fitzgerald was assigned to nearly all of

the asbestos bankruptcies filed within the Third Circuit, including the Consolidated Cases. In the

course of administering these cases, Judge Fitzgerald determined that because the 2019 Exhibits

contain personal-identifying information of potential asbestos claimants, disclosure of that

information on the electronic docket posed a risk to privacy interests and presented the potential

for identity theft. On August 25, 2004, Judge Fitzgerald entered the first in a series of the 2019

Orders,[7] which together standardized disclosures required by Bankruptcy Rule 2019 for the

---

[7] *See* Order Requiring Filing of Statements Pursuant to Fed. R. Bankr. P. 2019, dated Aug. 25,
2004 *Flintkote* D.I. 201 (A524); Amendatory Order Requiring Filing of Statement Pursuant to
Fed. R. Bankr. P. 2019, dated Aug. 27, 2004, *Flintkote* D.I. 219 (A528); Revised Order
Requiring Filing of Statements Pursuant to Fed. R. Bankr. P. 2019, dated Oct. 22, 2004,
*Flintkote* D.I. 337 (AP001); Administrative Order with Respect to 2019 Statements and/or

asbestos cases filed in the Third Circuit.

Pursuant to the 2019 Orders, lawyers representing multiple claimants were required to file 2019 Statements, which included the name and address of the law firm but excluded any substantive information. The 2019 Statements were electronically filed and available on the public docket. These lawyers were also required to submit exhibits to the 2019 Statements, which contained substantive information about their clients (and potential clients) and their clients' claims (and potential claims). The 2019 Exhibits – which might include full social security numbers and names and extent of disease conditions – were submitted to the Clerk of the Bankruptcy Court on compact disc (CD). Unlike the 2019 Statements, the 2019 Exhibits were not electronically docketed.

The 2019 Orders did not, however, seal the 2019 Exhibits. Rather, the 2019 Orders regulated access to the 2019 Exhibits, in light of privacy concerns, and established a procedure by which a party seeking access to the 2019 Exhibits may request it. (*See Flintkote* D.I. 402, 10/6/04 Hr'g. Tr. at 55)

## B. Appeals of the 2019 Orders

The procedures established by Judge Fitzgerald in her 2019 Orders have been reviewed and approved by several courts within the Third Circuit. *See In re Kaiser Aluminum Corp.*, 327 B.R. 554 (D. Del. 2005); *In re Pittsburgh Corning Corp.*, 2005 WL 6128987 (W.D. Pa. Sept. 27, 2005), *aff'd, In re Pittsburgh Corning Corp.*, 260 F. App'x 463 (3d Cir. 2008). For instance, after the 2019 Orders were entered, certain insurers contended that the 2019 Orders, as

Exhibits Submitted in Certain Asbestos Cases that do not Comply with the Order, as Amended, Governing the Filing Thereof, dated Dec. 23, 2004, *Flintkote* DI 511, *WRG* D.I. 7349 (AP007); Supplement to Revised Order Requiring Filing of Statements Pursuant to Fed. R. Bankr. P. 2019, dated July 15, 2005, *Flintkote* D.I. 957 (AP010).

5

implemented in the *Kaiser* and *Flintkote* bankruptcies, were erroneous. *See Kaiser*, 327 B.R. at 557. In the course of determining that the insurers did not have standing to challenge the 2019 Orders, former District Judge Farnan of this Court stated, "even if the Court concludes that Appellants have standing to challenge the Revised Rule 2019 Orders, the Court concludes that the Bankruptcy Court did not err in . . . restricting access to the Rule 2019 information." *Id.* at 559. The Court added that "the Revised 2019 Orders issued by Judge Fitzgerald . . . comport with the requirements of Rule 2019, while taking into consideration the complexities of mass tort litigation." *Id.* Judge Farnan emphasized that "the Bankruptcy Court is regulating access to the information because of privacy concerns" and found that the 2019 Orders "strike the appropriate balance between maintaining the public's right to access the Rule 2019 information and ensuring that the information is not misused." *Id.* at 560.

Insurers similarly appealed the 2019 Orders entered in the *Pittsburgh Corning* bankruptcy. The District Court for the Western District of Pennsylvania dismissed that appeal for lack of standing. *See Pittsburgh Corning*, 2005 WL 6128987, at *10. The Third Circuit affirmed. *See Pittsburgh Corning*, 260 F. App'x at 465 (finding "no error in the District Court's resolution of Appellants' access challenge").

## C.     Garlock's Motion for Access

Litigation over access to the 2019 Exhibits from the Consolidated Cases arose again in 2009, when an asbestos defendant, Garlock Sealing Technologies, LLC ("Garlock"), filed a motion for access in the *Pittsburgh Corning* bankruptcy, in connection with its objections to confirmation of the *Pittsburgh Corning* bankruptcy plan. The Bankruptcy Court denied

Garlock's motion for access in 2010.[8]

A year later, Garlock, by then itself a debtor in an asbestos bankruptcy – pending in the Western District of North Carolina, No. 10-31607 (Bankr. W.D.N.C.) – filed a new series of motions seeking access to the 2019 Exhibits submitted in each of the Consolidated Cases (and also in three Pennsylvania bankruptcy cases, which, like the Consolidated Cases, were were all before Judge Fitzgerald at the time).[9] Certain asbestos claimants' committees, along with plaintiffs' law firms, filed objections, as did certain debtors. Garlock subsequently filed amended motions. Judge Fitzgerald denied the motions.[10]

In doing so, Judge Fitzgerald explained:

> In the context of bankruptcy asbestos personal injury cases, when a 2019 is filed, a lawyer typically has a number of clients who have been, or assert that they have been, exposed to asbestos and who often may have sustained those exposures in multiple contexts. For example, an employee of one company may have worked with products of multiple asbestos manufacturers, producers, or distributors or may have worked for more than one asbestos company. In addition, individuals will often seek legal advice notwithstanding the absence of disease or symptoms, simply because of the possibility of exposure and because the latency period for certain asbestos diseases can be decades. Thus, notwithstanding the use of the word "creditor" in Rule 2019, individuals seeking legal counsel with respect to asbestos exposure may or may not have current claims and may or may not ever qualify as a claimant under § 524(g). Nonetheless, they are represented by an attorney who is required to file a 2019 statement listing all those he represents who are or may be claimants, even if

---

[8] Order Denying Expedited Motion of Garlock Sealing Technologies, LLC for Order Authorizing Access to Certain 2019 Statements Filed in Case, *In re Pittsburgh Corning Corp.*, No. 00-22876 (Bankr. W.D. Pa. Mar. 25, 2010) (D.I. 7579).

[9] *See, e.g.*, Motion of Garlock Sealing Technologies LLC for Orders Authorizing Access to 2019 Statements Filed in This Court and for Related Relief, *In re Pittsburgh Corning Corp.*, No. 00-22876 (Bankr. W.D. Pa. Jan. 10, 2011) (D.I. 8096).

[10] *See In re ACandS, Inc.*, 462 B.R. 88 (Bankr. D. Del. 2011), *rev'd, In re Motions for Access of Garlock Sealing Techs. LLC*, 488 B.R. 281 (D. Del. 2013).

the claims are never allowable or allowed.

Statements under 2019 are ***attorney*** statements of authority to represent multiple clients as listed thereon. They are not claims and are not affirmative statements by the clients themselves. Counsel are in a predicament. If they fail to file the statements (or exclude a client who has not yet but eventually does assert a claim against the debtor, or neglect to amend a 2019 when taking on a new client or losing a client), counsel may face substantial penalties that could prejudice their clients. For example, Rule 2019 provides that if the court finds a failure to comply with Rule 2019(a) "or with any other applicable law regulating the activities and personnel of any entity . . . the court may refuse to permit that entity . . . to be heard further . . ." The court may also "hold invalid any authority, acceptance, rejection, or objection given, procured, or received by an entity" that has not complied. Even from the enumerated penalties, it is clear that the Rule applies to regulate conduct in the specific bankruptcy case and no other.

Rule 2019 is not a discovery tool but is to ensure that plans are negotiated and voted on by those authorized to act on behalf of real parties in interest ***in a case***. The 2019 statements are not, and do not substitute for, proofs of claim or ballots of creditors who vote on a plan of reorganization.

*ACandS*, 462 B.R. at 96 (emphasis in original; internal citations and footnotes omitted); *see also id.* at 93 n.6 ("We note that the mere inclusion of a client on a 2019 in an asbestos case does not necessarily mean that the client filed or will file a claim or that any claim will be allowed once presented to the trust."); *id.* at 94 ("2019 statements are representations by counsel to a court as to who their clients are. The statements are not claims.").

On appeal, this Court reversed, concluding that "access should be provided" but "subject to certain limitations." *In re Motions for Access of Garlock Sealing Technologies LLC*, 488 B.R. 281, 286 (D. Del. 2013) ("*Garlock*"). Those restrictions included: (1) Garlock would be provided access to the 2019 Exhibits "solely for the purpose of using them in connection with the estimation proceedings in its own bankruptcy case;" (2) "Garlock may not publicly disclose information contained in the 2019 Exhibits except in an aggregate format that does not identify

any individual;" (3) "before there is any disclosure of the information Garlock divines from the

2019 Exhibits, Garlock must first propose to the North Carolina Bankruptcy Court an appropriate

form of protective order for that Court to consider;" and (4) "Garlock shall not be granted access

to . . . retention agreements." *Id.* at 302. This Court subsequently entered an implementing

order, which provided as follows:

> To the extent Retention Agreements are inadvertently provided to
> Garlock, Garlock shall not review such Retention Agreements,
> shall promptly destroy such Retention Agreements, and shall not
> provide them to any other person or entity or use them for any
> purpose whatsoever.
>
> This Order authorizes Garlock to use such 2019 Exhibits solely in
> connection with the estimation proceedings in Garlock's chapter
> 11 bankruptcy cases . . . and neither the 2019 Exhibits nor the
> information contained therein may be used for any other purpose.
>
> Garlock shall not disclose publicly the information contained in
> any 2019 Exhibit except in an aggregate format that does not
> identify any individual represented person.
>
> Recognizing that Garlock has requested the North Carolina
> Bankruptcy Court to enter a proposed protective order pursuant to
> the Protective Order Motion, public disclosure of the information
> in any 2019 Exhibit shall be subject to the terms of a protective
> order entered by the North Carolina Bankruptcy Court that is
> consistent with this Court's Opinion and Order and the terms of
> this Order.

(Civ. No. 11-1130-LPS, D.I. 67 at ¶¶ 1-4) On March 19, 2013, the WDPA District Court issued

an order adopting this Court's opinion in *Garlock* and granting Garlock access to the 2019

Exhibits filed in the three WDPA bankruptcy cases, subject to certain restrictions. *See In re*

*Pittsburgh Corning Corp.*, Civ. No. 11-1406-NBF, D.I. 33 (W.D.P.A. Mar. 19, 2013); *In re Mid-*

*Valley*, Civ. No. 11-1439-NBF, D.I. 25 (W.D.P.A. Mar. 19, 2013); *In re North American*

*Refractories Co.*, Civ. No. 11-1452, D.I. 30 (W.D.P.A. Mar. 19, 2013) (together, "*Garlock II*").

    Following entry of the orders by the Delaware and WDPA District Courts, in the *Garlock*

and *Garlock II* cases, respectively, on remand Judge Fitzgerald established a protocol for the

production of 2019 Exhibits ("Protocol Order"). (*WRG* D.I. 30490) The Protocol Order made

clear that (1) "Garlock may not access retention agreements, exemplars or their equivalents;"

(2) "Garlock may not use the 2019 Exhibits or their contents for any purpose other than the

Liability Estimation in the NCWB Proceedings;" and (3) "Garlock may not disclose the identity

of any individual listed in any of the 2019 Exhibits." (*Id.* at 4-5) The Protocol Order also

designated a special master, who was instructed (among other things) to "review the file [going

to Garlock] to ensure that the document does not list more than the last four digits of an

individual's social security number."[11] (*Id.* at 7)

---

[11] The Protocol Order further stated: "[t]he NCWB Protective Order identifies restrictions on the Receiving Estimation Parties' use of the 2019 Exhibit Production. The restrictions imposed by this Protocol shall be construed as complementary to the restrictions imposed by the NCWB Protective Order. Where there is a perceived conflict between the restrictions and/or limitations imposed by the NCWB Protective Order and this Protocol, the more restrictive and/or limiting provision shall govern." (*WRG* D.I. 30490 at 9)

In addition, the Protocol Order provided that "[p]rior to providing any copy of the 2019 Exhibit to a Receiving Estimation Party or any other person or entity authorized by NCWB, Garlock shall obtain and file in each of the above-captioned cases, an affidavit setting forth that the recipient understands and agrees to be bound by the NCWB Protective Order and this Protocol, including the return and destruction requirements . . . ." (*Id.*) Further, within 30 days after final confirmation or substantial consummation of the Garlock plan of reorganization, whichever is earlier, Garlock and each recipient authorized to receive copies must file a sworn affidavit in each of the cases attesting that the recipient and its employees, agents, experts and any other person or related entity (1) "[u]sed the 2019 Exhibits solely for the purpose of the NCWB Proceeding;" (2) "[d]id not share or distribute any of the 2019 Exhibits (in whole or in part) with any person or entity other than what was expressly authorized by an Order of the NCWB, DEB, or PAWB;" (3) "[d]id not and will not publicly disclose the identity of any individual . . . other than what was . . . authorized"; and (4) "[r]etrieved, collected and permanently destroyed all copies of the 2019 Exhibit Production, including any and all subparts or subsets, regardless of whether any or all of the 2019 Exhibit data was merged with any other data." (*Id.* at 10)

These various orders pertaining to Garlock's limited access to the Rule 2019 Exhibits all remain in effect.

## D.     The Access Decision

Honeywell and Ford filed their motions for access in the Consolidated Cases on June 30, 2016. (A1-A154) Honeywell and Ford seek use of the 2019 Exhibits by "any entity," not just themselves. (*See* A18) Honeywell stated that it intended to use the information "to review and analyze all aspects of the NARCO Trust's operations, including, without limitation, its claims processing procedures and the claims submitted to the NARCO Trust under the individual review and expedited review processes. The valuable information contained in the 2019 Exhibits will help to ensure that the purpose of the NARCO Trust, which is to promptly pay holders of 'valid' claims, is fulfilled . . . ." (A4-A5) Both Honeywell and Ford also seek to use the 2019 Exhibits for unspecified lobbying efforts. (A336, 10/14/16 Hr'g Tr. at 35; D.I. 52 at 31)

The NARCO TAC filed an objection to Honeywell and Ford's motion for access, which the other TACs, the FCRs, and various other parties joined. On October 14, 2016, the Bankruptcy Court heard oral argument on the motion for access. (A332-481)

On December 1, 2016, the Bankruptcy Court entered the Access Decision. Recognizing this Court's ruling in *Garlock*, the Bankruptcy Court looked to whether Appellants had articulated a proper purpose for access. *See* 560 B.R. at 233-34. Reviewing Third Circuit case law, the Bankruptcy Court found no precedent for unlimited use of 2019 materials outside of bankruptcy proceedings and no precedent holding that lobbying and legislative efforts constitute a proper use. *See id.* at 237. The Bankruptcy Court determined that Appellants were entitled to access the 2019 Exhibits only for the limited purpose of investigating fraud in the claims process. *See id.* Accordingly, the Bankruptcy Court set certain limitations to protect individuals. In particular, the Bankruptcy Court held that access would be granted solely to Honeywell and Ford, for a three-month period, after which the exhibits had to be destroyed. *See id.* Appellants

11

were further prohibited from sharing the identity of individuals by name or other identifying

means with the NARCO Trust. *See id.* Finally, the Bankruptcy Court determined it appropriate

to appoint a facilitator to oversee production of the 2019 Exhibits, including the removal of the

retention agreements and all but the last four digits of social security numbers, and imposed the

costs associated with the efforts of the facilitator on Appellants. (*See id.; ACandS* D.I. 3810)

On November 22, 2016, Honeywell and Ford filed notices appealing the Access Decision

to the District Court (the "Notices of Appeal"). In addition, on November 23, 2016, Honeywell

moved to stay the Access Decision pending resolution of this appeal (otherwise the three months

of access would have expired), which the Bankruptcy Court granted on December 1, 2016.

(*ACandS* D.I. 3835; *see also* D.I. 46 (denying as moot stay motion filed in this Court)) On

December 6, 2016, the TACs and FCRs filed notices of cross-appeal of the Access Decision (the

"Notices of Cross Appeals" and, together with the Notices of Appeal, the "Appeals").

Collectively, the Appeals of the Access Decision have generated 45 separate cases before

the District Court. By order entered May 24, 2017 (D.I. 15), the Appeals are consolidated for

procedural purposes under Civ. No. 16-1078-LPS.

Because Appellants want unlimited access to the 2019 Exhibits, they have appealed the

Bankruptcy Court's decision "to the extent that the Opinion and Order [i.e., the Access Decision]

restrict Appellants' ability to access and use the 2019 Exhibits." (D.I. 16 at 1) In turn, the FCR

and TAC Appellees' have cross-appealed based on their contention that the Bankruptcy Court

should not have provided Appellants any access to the 2019 Exhibits. (*See* D.I. 22) Appellee

Owens Corning, a former debtor whose bankruptcy is now closed, takes no position on the

merits of the issues that are the subject of the Appeals. But it has appeared solely for the purpose

of arguing that if access is granted, and if costs are incurred in connection with providing

Appellants such access, none of the debtors in the Consolidated Cases (including Owens Corning) should be required to bear any of those expenses. (D.I. 21 at 6) Two amici – Washington Legal Foundation and American Association for Justice – have filed competing amicus briefs. (*See* D.I. 27, 31)

The Appeals are fully briefed. (*See* D.I. 16, 17, 21, 22, 23, 34, 35, 37, 39) On March 7, 2018, the Court held oral argument. (D.I. 52)

## II.     LEGAL STANDARDS

Appeals from the Bankruptcy Court to this Court are governed by 28 U.S.C. § 158. Pursuant to § 158(a), district courts have mandatory jurisdiction to hear appeals "from final judgments, orders, and decrees" and discretionary jurisdiction over appeals "from other interlocutory orders and decrees." 28 U.S.C § 158(a)(1) and (3). The Order granting Appellants limited access to the 2019 Exhibits is a final order. *See United States v. Smith*, 123 F.3d 140, 145 (3d Cir. 1997) ("Orders either granting or, as in this case, denying access to court proceedings or records are appealable as final orders . . . .").

In conducting its review of the issues on appeal, this Court reviews the Bankruptcy Court's findings of fact for clear error and exercises plenary review over questions of law. *See Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999). The Court must "break down mixed questions of law and fact, applying the appropriate standard to each component." *Meridian Bank v. Alten*, 958 F.2d 1226, 1229 (3d Cir. 1992).

The Court reviews *de novo* the Bankruptcy Court's interpretation of a statute and reviews for clear error whether the matter at issue falls within the statute. *See Robbins v. Tripp*, 510 B.R. 61, 64 (2014) (citing *In re Neal*, 461 F.3d 1048, 1052 (8th Cir. 2006)). Given the Court's legal conclusions – as discussed below, that § 107(c) is the basis upon which the Bankruptcy Court

13

(properly) restricted access, and that § 107(c) sets forth a flexible or discretionary standard under which the Court "may" protect an individual – the Court reviews restrictions on access under the abuse of discretion standard.[12] A Bankruptcy Court decision constitutes an abuse of discretion if that court fails to apply the proper legal standards or procedures, or bases its decision on clearly erroneous findings of fact. *See e.g., Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc.*, 50 F.3d 253, 257 (3d Cir. 1995).

## III.    DISCUSSION

### A.    Presumption of Public Access: Common Law and Statutory Bases

Under the common law, there is a long-standing presumption of public access to judicial records. *See Nixon v. Warner Comm'cns, Inc.*, 435 U.S. 589, 597 (1978). As the Third Circuit has explained, public access "promotes public confidence in the judicial system by enhancing testimonial trustworthiness and the quality of justice dispensed by the court;" "diminishes possibilities for injustice, incompetence, perjury, and fraud;" "provide[s] the public with a more complete understanding of the judicial system and a better perception of its fairness;" and "helps assure that judges perform their duties in an honest and informed manner." *Goldstein v. Forbes (In re Cendant Corp.)* 260 F.3d 183, 192 (3d Cir. 2001) (citations omitted). However, despite the important interests advanced by public access to judicial records, the right of access is "not absolute." *Nixon*, 435 U.S. at 598. "Every court has supervisory power over its own records and

---

[12] "Federal courts in this circuit, as well as other circuits, consistently have held that where a decision of the bankruptcy court was made pursuant to a 'flexible' code provision, such as one providing that the court 'may' take certain action under appropriate circumstances, the proper standard of review to be applied on appeal is whether the court's decision constituted an abuse of discretion." *In re Cont'l Airlines*, 150 B.R. 334, 338 (D. Del. 1993) (citing *In re Vertientes, Ltd.*, 845 F.2d 57, 59 (3d Cir. 1988); *In re Sharon Steel Corp.*, 871 F.2d 1217, 1226 (3d Cir. 1989)).

14

files, and access has been denied where court files might have become a vehicle for improper

purposes." *Id*.

The common law presumption of access to judicial records is codified in § 107 of the

Bankruptcy Code. As originally enacted by Congress in 1978, § 107(a) established a broad right

of public access to all papers filed in a bankruptcy case, subject only to certain limited

exceptions:

> Except as provided in subsection (b) of this section, a paper filed in
> a case under [the Bankruptcy Code] and the dockets of a bankruptcy
> court are public records and open to examination by an entity at
> reasonable times without charge.

H.R. Rep. No. 595, 95th Cong., 1st Sess. 317-18 (1977); S. Rep. No. 989, 95th Cong. 2d Sess. 30

(1978). Section 107(b) provided – and still provides – that, on request of a party in interest, the

Bankruptcy Court shall (and, on its own motion, may) protect an entity with respect to "a trade

secret or confidential research, development, or commercial information" or matter that is

"scandalous or defamatory." 11 U.S.C § 107(b).

In 2005, Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection

Act of 2005 ("BAPCPA"), adding subsection (c), which provides, in relevant part:

> (c)(1) The bankruptcy court, for cause, may protect an individual,
> with respect to the following types of information to the extent the
> court finds that disclosure of such information would create undue
> risk of identity theft or other unlawful injury to the individual or the
> individual's property:
>
> > (A) Any means of identification (as defined in section
> > 1028(d) of title 18)[13] contained in a paper filed, or to be

---

[13] 18 U.S.C. § 1028(d) defines "means of identification" as: "any name or number that may be
used, alone or in conjunction with any other information, to identify a specific individual,"
including any –

> (A) name, social security number, date of birth, official State or
> government issued driver's license or identification number, alien

15

filed, in a case under this title.

    (B)     Other information contained in a paper described in subparagraph (A).

11 U.S.C. § 107(c)(1).

Commentators have observed that BAPCPA amended § 107 to address privacy concerns and that the addition of § 107(c) "broadened the situations in which the court could protect individuals from disclosure of sensitive information in light of the emerging problem of identity theft and also the possible need to protect individuals from domestic violence or other injury." 2 COLLIER ON BANKRUPTCY ¶ 107.LH[2] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

The legislative history giving rise to § 107(c) includes this statement:

> Privacy Protections. Under current law, nearly every item of information filed in a bankruptcy case is made available to the public. S. 256 restricts public access to certain personal information pertaining to an individual contained in a bankruptcy case file to the extent the court finds that disclosure of such information would create undue risk of identity theft or other unlawful injury to the individual or the individual's property. In addition, the bill prohibits the disclosure of the names of the debtor's minor children and requires such information to be kept in a nonpublic record, which can be made available for inspection only by the court and certain other designated entities. Further, S. 256 prohibits the sale of customers' personally identifiable information by a business debtor unless certain conditions are satisfied.

---

> registration number, government passport number, employer or taxpayer identification number;
>
> (B) unique biometric data, such as fingerprint, voice print, retina or iris image, or other unique physical representation;
>
> (C) unique electronic identification number, address, or routing code; or
>
> (D) telecommunication identifying information or access device (as defined in section 1029(e)).

16

H.R. Rep. 109–31(I), Pub. L. 109-8 (Apr. 8, 2005), 2005 U.S. Code Cong. & Admin. News 88.

Thus, the addition of § 107(c) in 2005 provided explicit statutory authority for what the

Bankruptcy Court was already doing in the Consolidated Cases through the 2019 Orders:

"restrict[ing] public access to certain personal information pertaining to an individual contained

in a bankruptcy case file." *Id.*[14] Thus, the Bankruptcy Court has recognized that at this point the

2019 Orders are supported by the authorization provided by § 107(c). *See ACandS*, 462 B.R. at

99-100 ("[T]he 2019s are not sealed, they simply are not placed on the public dockets based in

part on § 107(c) which permits the court to protect an individual with respect to '[a]ny means of

identification.'").

In *Garlock*, this Court held:

> [T]he 2019 Statements, including the Exhibits, were "filed
> with" the Bankruptcy Court. They are, therefore, "judicial
> records." . . .
>
> As the 2019 Exhibits are judicial records that were filed
> with the Bankruptcy Court, there is a presumptive right of public
> access to them.

488 B.R. at 297-98. Nothing has been drawn to the Court's attention in these Appeals that has

caused the Court to reconsider these conclusions.

## B.    Appellants Cannot Appeal the 2019 Orders

The Bankruptcy Court first entered the 2019 Orders in 2004 and amended them in 2005,

---

[14] On July 15, 2005, following the enactment of § 107(c), the Bankruptcy Court further
supplemented the 2019 Orders. *See* Supplement to Revised Order Requiring Filing of
Statements Pursuant to Fed. R. Bankr. P. 2019, dated July 15, 2005, *Flintkote* D.I. 957 (AP010).

after Congress adopted 11 U.S.C. § 107(c).[15]  As has been established by much prior litigation,

the Bankruptcy Court had authority to enter these orders on multiple bases: its supervisory power

over its own records, taking account of concerns regarding privacy and widespread public access

to the electronic docket;[16] its discretionary authority under § 107(b);[17] its equitable powers under

§ 105(a);[18] and judicial precedent holding that a Bankruptcy Court may tailor Rule 2019

requirements to the particular circumstances of a case.[19]

As the Bankruptcy Court has since explained (as noted above), the 2019 Orders were

entered, at least in part, under the authorization provided by § 107(c).  *See ACandS,* 462 B.R. at

99-100 (holding "it is subsection (c) that is operative in the cases before us" and noting that 2019

Exhibits "are not placed on the public dockets based in part on § 107(c) which permits the court

---

[15] *See* Revised Order Requiring Filing of Statements Pursuant to Fed. R. Bankr. P. 2019, dated Oct. 22, 2004, *Flintkote* D.I. 337 (AP001); Supplement to Revised Order Requiring Filing of Statements Pursuant to Fed. R. Bankr. P. 2019, dated July 15, 2005, *Flintkote* D.I. 957 (AP010).

[16] *See Nixon,* 435 U.S. at 598 (bankruptcy court, like "'[e]very court," has "supervisory power over its own records and files" and can use that power to protect its records and files from risk of misuse); *Pittsburgh Corning,* 2005 WL 6128987, at *10 (ruling, in response to request for Rule 2019 Exhibits, that Bankruptcy Court was free to hold that "countervailing concerns justify the continued protection of the information"); *In re Bennett Funding Grp., Inc.*, 226 B.R. 331, 336 (Bankr. N.D.N.Y. 1998) ("If the information does not represent trade secrets or confidential research, development or commercial information, then whether to permit access to the information is a matter left to the Court's discretion, . . . requir[ing] the Court to examine the relevant facts and circumstances and then to balance the interests of the party opposing disclosure with that of the public.") (citations omitted); *see also* 10/6/04 Hr'g. Tr. at 20, 30-32, 34-35 & 55 (recognizing 2019 Exhibits will implicate privacy concerns in light of widespread public access on electronic case filing system; concluding "court has discretion to protect privacy interests," under § 105(a) and possibly § 107(b); and requiring party seeking access to file motion showing how information is "necessary," "relevant," or why it is otherwise sought).

[17] *See* 10/6/04 Hr'g. Tr. at 30-32.

[18] *See* 10/6/04 Hr'g. Tr. at 31.

[19] *See* 10/6/04 Hr'g. Tr. at 20 & 32.

to protect an individual with respect to '[a]ny means of identification'"). Following the enactment of § 107(c), the Bankruptcy Court has consistently applied § 107 to each request for access to the 2019 Exhibits. *See AC&S*, 462 B.R. at 99-100; Access Decision, 560 B.R. at 232.

As is also clear from precedent, Honeywell and Ford cannot now appeal the entry of the 2019 Orders. Even assuming that Appellants would have standing to press such a challenge, it lacks merit. The propriety of the 2019 Orders, in place (in one form or another) for 14 years now, has been established by prior appellate review, and is not subject to collateral attack, as this Court has previously determined. *See Garlock*, 488 B.R. at 299.

### C. Section 107 Is Applicable to Appellants' Motion

The parties devote a great deal of attention to disputing whether Honeywell and Ford's motion for access to the 2019 Exhibits is governed by common law standards or, instead, by § 107. Relatedly, they are not in agreement as to whether the Bankruptcy Court applied common law or the statute. Considering these legal questions *de novo*, as the Court is required to do, this Court holds that Appellants' motion must be resolved pursuant to the standards of § 107. Less importantly, but equally clear to the Court, the Court concludes that the Bankruptcy Court did apply § 107 to the motion.[20]

---

[20] Appellants assert they are "left to speculate" as to whether the Bankruptcy Court intended to provide restricted access under § 107 or the common law. (D.I. 16 at 33 n.13) This is a curious argument. Before the Bankruptcy Court, Appellants insisted they had a right to access the 2019 Exhibits under *both* § 107 and the common law. (*See* A11, ¶ 26 (Appellants arguing for common law right of access); *see also* A222 (Honeywell arguing that common law right of access rendered any right to access under § 107 gratuitous)) Understanding this, the Bankruptcy Court concluded that § 107 governs Appellants' request for access. The Bankruptcy Court stated precisely this during oral argument. When Appellees' counsel said, "I don't know how much time Your Honor wants to spend on kind of discussing whether 107 applies or not," the Court responded, "Well, I think it does apply." (A392, 10/14/16 Hr'g. Tr. at 61) Subsequently, at the outset of its Opinion, the Bankruptcy Court wrote: "Honeywell's and Ford's argument in favor of access rests on Bankruptcy Code Section 107. . . ." 560 B.R. at 231. After reproducing § 107(a), (b), and (c)(1) in its Opinion, the Bankruptcy Court held that movants would be

Appellants contend that § 107 is applicable. Appellees disagree, arguing that § 107 is applicable only to papers that are both "filed in a case" and on "the dockets of a bankruptcy court." (D.I. 22 at 26-27) Here, the 2019 Orders provide that the 2019 Exhibits were submitted to the Clerk but *not* filed on the public docket. It follows, in Appellees' view, that § 107 is inapplicable. (*Id.* at 27) (stating 2019 Exhibits are "unavailable on the public docket, except upon motion by a party and order of the Bankruptcy Court") (citing *Kaiser*, 327 B.R. at 557).

The Court rejected this argument in *Garlock*, 488 B.R. at 297. In *Garlock*, the Court stated: "The 2019 Statements, including the Exhibits, were 'filed with' the Bankruptcy Court. They are, therefore, judicial records." *Id.* (citing *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 781 (3d Cir. 1994). Nothing argued by Appellees here suggests a meritorious basis for the Court to change its view. Section 107 applies to papers that are "filed in a case" *or* that are on "the dockets of a bankruptcy court." The 2019 Exhibits satisfy the former condition.

Therefore, § 107(a)'s public right to access applies to the 2019 Exhibits, and access must be granted unless one of the statutory exceptions applies.

---

provided limited access. *Id.* at 232 (citing no basis other than § 107 for relief granted). The Access Decision contains numerous other references to § 107 as a basis for relief, *see, e.g.*, *id.* at 234, and expressly adds that the common law is not affecting the decision:

> Honeywell and Ford also argue that they have a common law right of access to the Rule 2019 Exhibits. They cite, among other cases, *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1068-70 (3d Cir. 1984); and *In re Cendant Corp.*, 266 F.3d 183, 192 (3d Cir. 2001). However, the District Court has already established that the Rule 2019 Exhibits are the kind entitled to protection and therefore the common law does *not* affect the Court's ruling.

*Id.* at 237 n. 5 (citing *Garlock*) (emphasis added).

**D.** **The 2019 Exhibits Come Within § 107(c)**

Appellants argue that Appellees presented no evidence that the information contained in

the 2019 Exhibits came within the scope of § 107(b) or (c) – and, further, that no such evidence

could be presented.  (D.I. 16 at 40-44)  Appellants relatedly contend that the Access Decision

contains no language indicating that the Bankruptcy Court, in granting limited access,

determined whether the exceptions in § 107(b) or (c) were satisfied or engaged in the appropriate

analysis.  (*Id.* at 34)  Appellees counter that it is unclear that § 107 imposes any evidentiary

burden and that, to the extent it does, ample evidence supports the Bankruptcy Court's

conclusion that the 2019 Exhibits contain information falling within § 107(c).  (D.I. 22 at 42-44)

Having found that § 107(a) applies to the 2019 Exhibits, it is next appropriate to consider

whether the exceptions to access codified in § 107 also apply.  No party now argues that § 107(b)

applies.  In the Bankruptcy Court, the NARCO TAC had argued that § 107(b)'s "confidential

commercial information" exception applied to portions of the 2019 Exhibits, as they contained

client lists for each particular law firm and retainer agreements (or exemplars).  But Appellants

made clear to the Bankruptcy Court that they are not seeking access to retainer agreements or

exemplars (*see* A191; A357, 10/14/16 Hr'g. Tr. at 26)), a commitment they reiterated before this

Court (*see* Tr. at 26).  As no other "confidential commercial information" has been identified,

§ 107(b) is inapplicable.

By contrast, the record establishes that § 107(c) does apply to the Rule 2019 Exhibits.

Pursuant to § 107(c), a bankruptcy court "may protect an individual with respect to [certain]

types of information to the extent the court finds that disclosure . . . would create undue risk of

identity theft or other unlawful injury to the individual or the individual's property."  The "types

of information" include "any name or number that may be used, alone or in conjunction with any

other information, to identify a specific individual." 18 U.S.C. § 1028(d).

As Appellees point out, and as is indisputable, such protectable information, e.g., names, addresses, social security numbers, and other identifiers, is ubiquitous in the 2019 Exhibits. Judge Fitzgerald expressly found that the 2019 Exhibits include at least some full social security numbers. (*See* Protocol Order, *WRG* D.I. 30490 at 5, ¶¶ 18-19 (stating: "[t]he PAWB Clerk's Office reviewed a sample of the CDs filed in the PAWB cases" and "confirmed that some of the 2019 Exhibits to which Garlock is granted access list the complete social security numbers of individuals, the disclosure of which is prohibited by Fed. R. Bankr. P. 9037(a)")) Moreover, all of the courts that have considered issues relating to these very same 2019 Exhibits have determined that privacy interests are implicated by the personal-identifying information found within the vast amount of materials. *See* 10/6/04 Hr'g. Tr. at 8 (noting "[t]he privacy issue is an important issue" as "[m]ost of these claimants are, frankly, elderly. They don't want to be harassed by third parties. They don't want to be harassed by insurance companies who aren't paying. They don't want to be harassed by so-called investment advisers. They signed up, not to have their social security numbers and their disease spread around the country or to their neighbors or anyone else."); *id.* at 20 ("I am really concerned about the privacy of these individuals" and, with respect to social security numbers, "even the last four digits are used for so many things"); *id.* at 30 ("reasonable access still nonetheless gives the Court the discretion to protect privacy interests"); *Kaiser*, 327 B.R. at 560 (noting that "the Bankruptcy Court is regulating access to the information because of privacy concerns" and that 2019 Orders struck "appropriate balance" between maintaining public's right of access and "ensuring that the information is not misused"); *ACandS*, 462 B.R. at 97-98 ("[B]ecause a claim held by an asbestos personal injury victim is highly intimate in nature . . . the details of the putative

22

creditor's interests have been kept from general public view to retain and protect privacy.").

Protective orders were entered in the Consolidated Cases, a further reflection of the views of the

parties to these cases – and of the Courts presiding over them – that information of a nature

warranting protection from unlimited public access was at stake. It was not necessary for

Appellees to introduce any additional evidence to establish that the 2019 Exhibits contain the

type of information with which § 107(c) is concerned.

Section 107(c)(1) provides that bankruptcy courts also "may protect" any "[o]ther

information" in a paper that contains any "means of identification." Again, it cannot reasonably

be disputed that such information is contained in the 2019 Exhibits. The 2019 Orders required

attorneys to include in the 2019 Exhibits the "names and addresses" of claimants and potential

claimants, and "for personal injury claimants, the type of disease giving rise to the claim." The

Bankruptcy Court specifically found that the 2019 Exhibits contain the following:

> (1) the names and addresses of the clients of the submitting
> attorney; (2) exemplars or actual copies of the relevant retention
> agreements; (3) identification of disease; (4) claim amounts, if
> liquidated; (5) sometimes full or partial social security numbers;
> (6) sometimes medical records, with information including full or
> partial social security numbers; family histories (including causes
> of death of family members), results of physical examinations,
> chest x-rays, and lung function tests, and other similarly sensitive
> medical information; and (7) sometimes other records that the law
> firm maintained in connection with or commingled with the
> required information.

Access Decision, 560 B.R. at 233. These are the same facts that were before the Court in

Garlock, where this Court found no error in the Bankruptcy Court's determination that the 2019

Exhibits (the same 2019 Exhibits at issue here) contained identifying material triggering privacy

concerns.

The Bankruptcy Court's findings are not clearly erroneous. Given the history of the

Consolidated Cases, prior findings of fact with respect to the contents of the 2019 Exhibits, and the disclosures required by the 2019 Orders themselves, Appellees were not required to submit, and the Bankruptcy Court was not required to cite, specific examples of personal-identifying and confidential medical information contained in the 2019 Exhibits. Under the appropriate standard of review, this Court is bound by the Bankruptcy Court's finding as to the "types of information" contained in the 2019 Exhibits.

With respect to the risk of identity theft, Appellants argue that "the only information contained in the 2019 Exhibits that could potentially be used by an identity thief is the full social security numbers of personal injury asbestos claimants." (D.I. 16 at 40) Appellants contend that the records will be redacted in accordance with Bankruptcy Rule 9037, which requires, among other things, redaction of social security numbers, and "[t]hese redactions eliminate any risk of identity theft that could result from Appellants' unrestricted use access." (D.I. 16 at 40-41) Appellants argue Appellees failed to present any evidence to the contrary, including evidence of past identity theft resulting from 2019 materials that have already been made public in these and other cases.

Assuming (without deciding) that § 107(c) imposes an evidentiary burden on Appellees, the record contains ample evidence supporting the Bankruptcy Court's conclusion. Section 107(c) references "risk," and assessment of risk is forward-looking. (*See* A440, 10/14/16 Hr'g. Tr. at 109; *id*. at A448-49, 117-18) While a specific potential harm must be identified, the standard does not require evidence of injury having occurred in the past or under similar circumstances. As Appellees argued below, 3300 CDs were submitted in the Consolidated Cases. (A449, 10/14/16 Hr'g. Tr. at 118) Appellees requested that the Bankruptcy Court take judicial notice of the identity theft resulting from the release of personal information in *In re Wet*

*Seal* (*see, e.g.*, A413, 10/14/16 Hr'g Tr at 82); *see also id.* at A445-46 (noting court's decision to keep addresses confidential in *In re Dex Media*).

With respect to other unlawful injury, Appellees identified the risk to privacy interests, and specifically the disclosure of private medical information. As the 2019 documents identify clients and contain personal-identifying information about hundreds of thousands of sick, elderly, and vulnerable victims of asbestos, Appellees argue that numerous courts, including this one, have held that this information is protectable because of privacy interests. The Bankruptcy Court's finding as to the risk of disclosure of private medical information was not clearly erroneous. (*See also* A372, 10/14/16 Hr'g. Tr. at 41) (Bankruptcy Court stating: "What about privacy concerns and the medical records? This goes beyond the names and social security numbers or the four digits of the social security numbers, this goes to, for example, family history.") Instead, it is supported by the record, and is consistent with how other courts have treated similar information.

Individuals have privacy interests in their medical records. Congress has enacted laws making it unlawful to disclose an individual's medical information.[21] The Third Circuit has "recognized the important privacy interest in one's medical records" and has taken the right to privacy . . . [into] consideration in the balancing process that courts conduct in deciding whether to file a document under seal." *Everett v. Nort*, 547 F. App'x 117, 122 n.9 (3d Cir. 2013) (internal citations omitted); *see also ACandS*, 462 B.R. at 97 ("[A] claim held by an asbestos personal injury victim is highly intimate in nature."). Under § 107(c), a bankruptcy court can deny access to even a person's name when that name appears in a filing that would necessarily

---

[21] *See e.g.*, Health Insurance Portability and Accountability Act of 1996 ("HIPAA") (federal law setting out rules and limits on who can access and receive individual's health information).

25

associate them with an unfavorable medical condition. *See In re L.K.*, 2009 WL 1955455, at \*2 (E.D.N.Y. Jul. 6, 2009) (prohibiting publication of debtor's full name under § 107 because association of name with medical condition would be "detriment[al]").

This Court has previously recognized, and acted to protect, the privacy interests of individuals identified in the 2019 Exhibits with respect to medical information.[22] Where materials contain personal identifiers, paired with confidential medical information, the potential risk to privacy interests in disclosure is self-evident. As the Third Circuit has held, "[t]here can be no question that . . . medical records, which may contain intimate facts of a personal nature, are well within the ambit of materials entitled to privacy protection. Information about one's body and state of health is matter which the individual is ordinarily entitled to retain with the private enclave where he may lead a private life." *United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 577 (3d Cir. 1980) (internal quotation marks and footnotes omitted). The Court finds no error in the Bankruptcy Court's determination that the 2019 Exhibits contain the type of information coming within § 107(c), and that the potential disclosure of private medical information in the 2019 Exhibits presents an undue risk of other unlawful injury, sufficient to trigger the Bankruptcy Court's discretion to protect individuals.

Appellants state that they are not seeking medical records at this time (to the extent that any medical records are even included in the 2019 Exhibits). (D.I. 16 at 43; *see also* Tr. at 26) They have now clarified that they are only seeking access to the same set of already-redacted materials that have already been provided to Garlock. (*See* Tr. at 117) While this refinement of

---

[22] *See Garlock,* 488 B.R. at 301 ("The Bankruptcy Court was properly concerned with issues of privacy and possible identity theft."); *id.* (granting access "subject to certain limitations, limitations that are intended to substantially reduce any threat to privacy interests"); *id*. at 302 (limitations "should largely (if not entirely) prevent identity theft and the other harms the Bankruptcy Court envisioned might follow from granting Garlock the access it seeks").

26

their request for access certainly reduces the risks of improper disclosure of personally-identifying information, and likewise reduces the risk of identity theft or other injury, it does not eliminate these risks, for reasons including that the redaction process (i.e., obscuring the first five digits of a social security number, removing medical records) is not perfect. Also, Appellees still seek access to each individual claimants' (and potential claimants') medical conditions and sufficient information to associate a particular condition with a specific individual. (*See* Tr. at 108-10) Thus, again, the record establishes that the 2019 Exhibits are within the scope of § 107(c).

**E.     The Bankruptcy Court Properly Considered Appellants' Purpose**

Appellants argue that the Bankruptcy Court erred in considering whether they have a proper purpose to access the 2019 Exhibits, characterizing the Bankruptcy Court's analysis as improperly grounded in common law principles. (D.I. 16 at 13, 60) In the Court's view, however, § 107(c) authorizes Bankruptcy Courts to consider the purposes of a party requesting access to 2019 materials, as part of its evaluation of whether – and, if so, how – to provide access while also "protect[ing] an individual." 11 U.S.C. § 107(c); *see also generally* William T. Bodoh and Michelle M. Morgan, *Protective Orders in the Bankruptcy Court: Congressional Mandate of Bankruptcy Code Section 107 and Its Constitutional Implications*, 24 HASTINGS CONST. L.Q. 67, 93 (1996) (explaining that § 107(b) provides court "myriad of options in fashioning an appropriate remedy"); *In re Moore*, 2016 WL 1467492, at *7 n.1 (Bankr. E.D. Tenn. Apr. 12, 2016) (citing same). The Bankruptcy Court did not err in considering Appellants' purposes for requesting access to the 2019 Exhibits.

Section 107 provides the Bankruptcy Courts with authority and discretion to fashion orders that appropriately balance the interests of a party seeking access to 2019 materials with

the interests of those whose information is contained therein. *See In re Anthracite,* 492 B.R. 162, 180 (Bankr. S.D.N.Y. 2013) ("When protection is required under § 107, the Court has discretion in deciding how to protect commercial information as § 107 does not mandate sealing – only protection."); *In re Borders Group, Inc.,* 462 B.R. 42, 47 (Bankr. S.D.N.Y. 2011) (courts have discretion with respect to what form of protection to grant under § 107); *In re Carter,* 2009 WL 3425828 (Bankr. N.D. Ala. Oct. 23, 2009) (granting sanctions against creditor for improperly filed papers containing identifiers). "In limited circumstances, courts must deny access to judicial documents – generally where an open inspection may be used as a vehicle for improper purposes." *Orion*, 21 F.2d 24, 27 (2d Cir. 1994) (noting court may limit access where purpose is improper); *Rivera,* 524 B.R. 438, 442 (D.P.R. 2015) (stating § 107 codifies public's common law right to access, but right is not absolute, and denial of access may be necessary if access is sought for improper purpose) (citing *Nixon*, 435 U.S. at 597).

Beginning in 2004 with the first of the 2019 Orders, the Bankruptcy Court has consistently acted to protect individuals by putting procedural protections in place to regulate access. First, the 2019 Exhibits were not publicly filed, in order to eliminate widespread public access on the electronic docket. Second, a party seeking access is required to file a motion for access with the Bankruptcy Court, "show[ing] how the information is necessary, relevant, whatever term you wish to choose." (10/6/04 Hr'g. Tr. at 55) Part of the contemplated, necessary showing, going back to the 2019 Orders themselves, is articulation (and evaluation) of the intended use or purpose for the materials being accessed.

The Bankruptcy Court did not err in considering Appellants' purpose or need for access. Rather, the Bankruptcy Court was properly following the procedure put in place by the 2019 Orders. Since the right of access is not unfettered, but must account for the risk of identity theft

and other potential injury to individuals' personal-identifying information, the required balancing

of interests necessarily calls on the Bankruptcy Court to consider in its analysis what Appellants

want to do with the 2019 Exhibits. Thus, the Bankruptcy Court's actions were consistent with

the authority and discretion provided to it under § 107(c).

### F.     Appellants Articulated One Proper Purpose

With respect to Appellants' purposes, the Bankruptcy Court observed that while

Appellants' motion relied on investigation of potential fraud in the claims process as a purpose,

Appellants elaborated at oral argument that they also intended to use the information for

lobbying. (A366, 10/14/16 Hr'g. Tr. at 35) Appellants added that they may have "50 other

purposes for using these statements" (*id.* at A354), expressing the view that their purposes are

irrelevant because § 107 grants them presumptive and unlimited access (*see* A352-53). *See also*

Access Decision, 560 B.R. at 234 ("[T]he order accompanying the Motion makes it clear that

Honeywell and Ford do not believe that a proper purpose must be stated. The order provides for

'any entity' to have access."). Based on these representations, the Bankruptcy Court looked to

relevant Third Circuit cases applying common law access doctrine and found no precedent for

limitless access to 2019 materials for use outside of judicial proceedings. *Id.* at 237. The

Bankruptcy Court also found no Third Circuit case considering whether lobbying is a proper

purpose of Bankruptcy Rule 2019. *See id.* The Bankruptcy Court ultimately determined that

Appellants may use the 2019 Exhibits for one proper purpose: "Honeywell and Ford may use the

2019 Exhibits to investigate fraud in the claims process and may share the information with the

NARCO Trust in an aggregate format." *Id.* The Access Decision expressly denies Honeywell

and Ford the ability to use the 2019 Exhibits for other purposes, including lobbying. *See id.*

This Court confronted a similar issue in *Garlock*. There Garlock articulated several

purposes for the access it was seeking to the 2019 Exhibits: use in its ongoing bankruptcy, and particular estimation proceedings; lobbying; and pursuit of potential RICO actions against asbestos plaintiffs' counsel. *See* 488 B.R. at 300. The Court held that use of the exhibits by Garlock in its own bankruptcy case (subject to appropriate limitations) was a proper purpose. The Court went on to state that "[h]aving found at least one proper purpose, the Court need not decide if Garlock's other stated purposes – pursuit of a potential RICO action as well as lobbying and legislative reform efforts – are also proper." *Id.* The Court further held that certain additional restrictions were required, tailored to Garlock's proper purpose. *See id.* at 302.

Although the Court did not expressly state it, implicit in its ruling in *Garlock* was its conclusion that only one of Garlock's articulated purposes was a proper purpose. *See generally* Access Decision, 560 B.R. at 237 ("The Court takes notice of the fact that the District Court did not provide for Garlock's similarly vague proposed use of the records for 'lobbying.'"). One of the principal reasons for considering the requesting party's purposes for access is, as explained above, to balance the requesting party's interests against the risks to the individuals identified in the 2019 Exhibits, and to craft any necessary and reasonable restrictions to protect the applicable interests. To undertake this balance – as this Court did, in *Garlock* – all proper purposes for access must be considered. That this Court in *Garlock* only considered Garlock's purpose of using the 2019 Exhibits in its estimation proceedings, and not any other purposes, was due to the Court's conclusion (admittedly, not articulated in the Opinion) that this was the only proper purpose identified by Garlock.

Here, too, the only proper purpose identified by Appellants is the use of the 2019 Exhibits in connection with ongoing proceedings, specifically to aid efforts to ferret out fraud in administration of the NARCO Trust. While the nature of the 2019 Exhibits may make them of

limited probative value in identifying any fraudulent claims that may be pending before the NARCO Trust, the weight – if any – to be given to them in connection with fraud-fighting efforts is not a matter for this Court to evaluate. All that this Court needs to decide, as it did in *Garlock* and reiterates here, is that rooting out fraud in an ongoing Court-supervised litigation or Court-created claims process, and helping enhance public confidence in such Court-related proceedings, is a proper purpose. Taking massive quantities of information about asbestos claimants and potential claimants – submitted under sensitive, time-constrained circumstances, in the midst of evolving versions of the 2019 Orders, none of which stated what personal-identifying information lawyers could ***not*** submit (e.g., full social security numbers), and all of which was designed to aid the Bankruptcy Court in the challenging task of managing complex, large-scale bankruptcy proceedings – and allowing it to be used outside of an ongoing, carefully-managed litigation or trust proceeding, would not be proper, as the risks of misuse and harm to individuals would greatly outweigh any value the 2019 Exhibits could possibly have (e.g., for lobbying or legislative efforts).

### G. It Is Proper to Balance Competing Interests Under § 107(c)

Appellants argue that the Bankruptcy Court is not authorized to "balance the interests of the public and private parties," since § 107 has "eliminated the balancing of public and private interests required by common law." (D.I. 16 at 34) They cite *Gitto Global*, in which the First Circuit stated: "Once the presumption of public access attaches under § 107(a), the next step in the inquiry is not to engage in a balancing of the equities, as required by the common law, but rather to determine whether the material at issue falls within a specific exception to the presumption – namely, into one of the § 107(b) categories." *In re Gitto Global Corp.*, 422 F.3d 1, 10 (1st Cir. 2005); *see also In re FiberMark*, 330 B.R. 480, 506 (Bankr. D. Vt. 2005) (stating

that "[i]f the § 107(b) exceptions do not apply, the inquiry is complete and the court's decision will favor public access"). Appellants contend that the Bankruptcy Court improperly engaged in balancing of interests by applying common law, rather than undertaking the appropriate statutory analysis. In support of their argument, Appellants merely point to the Bankruptcy Court's references to three Third Circuit cases which involved balancing of interests. (*See* D.I. 16 at 28) (citing Third Circuit decisions in *Pansy, Cendant*, and *LEAP Systems Inc. v. MoneyTrax, Inc.,* 638 F.3d 216 (3d Cir. 2011))

The Court perceives no error in the Bankruptcy Court's approach.[23] Furthermore, considering the issue *de novo*, the Court concludes that under the appropriate statutory analysis – that is, determining whether § 107(c) is applicable to the 2019 Exhibits – it is appropriate to consider and balance the interests both for and against access, in order to craft any necessary and reasonable limitations on that access.

The statute provides: "The bankruptcy court, *for cause, may* protect an individual . . . *to the extent* the court finds that disclosure of such information would create *undue risk* of identity theft or *other unlawful injury*." 11 U.S.C. § 107(c) (emphasis added). The Supreme Court has "emphasized that the word 'may' clearly connotes discretion." *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S.Ct. 1923, 1931 (2016) (internal quotation marks omitted). The definition of "undue" is "excessive or unwarranted," a conclusion that can only be reached based upon a consideration of competing interests, particularly in weighing the value of making information

---

[23] The Bankruptcy Court cited the Third Circuit's decisions in *Cendant* and *LEAP* for the principle that access may be denied where court files could potentially become a vehicle for improper purposes – a statement that is consistent with § 107(c). The Bankruptcy Court merely mentions the balancing test set forth in *Pansy,* in which the Third Circuit considered a request to modify a protective order, and determined that such a request (like the 2019 Orders) required the movant to come forward with a reason to modify the order.

available against the risk of "identity theft or other unlawful injury" resulting from such access. *See* 2 COLLIER ON BANKRUPTCY ¶ 107.04 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) ("Section 107(c) gives the court broad discretion to protect an individual with respect to any information, including identifying information, in a paper filed or to be filed with the court to the extent the court finds that disclosure of the information would create an undue risk of identity theft or unlawful injury to the individual or the individual's property."). Making the determinations required by these portions of § 107(c) necessarily entails consideration of competing interests.

Appellants cite many cases for the purported proposition that "Bankruptcy Code sections 107(b) and (c) dispense with the Court's discretion under the common law." (D.I. 16 at 31-32, 34) However, not one of these cases applied § 107(c). *See In re Blake*, 452 B.R. 1, 8 (Bankr. D. Mass. 2011) (finding § 107(c) inapplicable, as no party alleged disclosure would create undue risk of identity theft or other unlawful injury); *In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 431 (9th Cir. 2011) (evaluating whether punitive damages estimation memorandum concerning priests contained "scandalous" material under § 107(b) exception); *FiberMark*, 330 B.R. at 506 (applying § 107(b) exception only and also noting that "[w]hile sealing is the exception rather than the rule, . . . the decision whether to seal bankruptcy court records lies within the discretion of the bankruptcy court"); *In re Phar-Mor, Inc.,* 191 B.R. 675, 679 (Bankr. N.D. Ohio 1995) (predating § 107(c) and only applying § 107(b)); *Gitto Global*, 422 F.3d at 7 (predating § 107(c); noting "there are only two exceptions to § 107(a): § 107(b)(1) and (2)," and then determining whether material at issue was "defamatory" under § 107(b)); *Neal*, 461 F.3d at 1053 (determining whether list of creditors who lent money to bankrupt judge fell within § 107(b)'s "scandalous" materials exception); *In re Food Mgmt Grp., LLC*, 359 B.R. 543,

554 (Bankr. S.D.N.Y 2007) (determining whether complaint contained "scandalous" or "defamatory" materials under § 107(b)). Section 107(b) requires a finding that the materials at issue fit within specific definitions of "trade secret," "confidential commercial information," or material that is "scandalous or defamatory," as those terms are defined in other statutes or common law.[24] Appellants' cases neither hold, nor persuade the Court, that balancing interests is not a proper part of a § 107(c) analysis.

With one exception, Appellants' cases all recognize that § 107 codified common law. *See FiberMark,* 330 B.R. at 505-06 (policy of open inspection is codified generally in § 107(a); *Gitto Global,* 422 F.3d at 6-7 (right of public access is codified in § 107); *Neal,* 461 F.3d at 1053 (same). Appellants cite *Roman Catholic,* in which the Ninth Circuit held that § 107 abrogated the common law. *See* 461 F.3d at 430 (examining *Neal* and *Gitto* and rejecting their application of common law concepts). However, that case addressed only whether a potential damages memorandum regarding alleged abuse by priests contained scandalous or defamatory materials under § 107(b). While the case mentions § 107(c) in passing, the provision is neither examined nor applied, and the case does not stand for the proposition that the Bankruptcy Court lacks discretion in a § 107(c) analysis. That this Court or the Bankruptcy Court may refer to

---

[24] *See, e.g., In re Alterra Healthcare*, 353 B.R. 66, 75 (Bankr. D. Del. 2006) ("Commercial information is information which would result in an unfair advantage to competitors by providing them information as to the commercial operations of the debtor. Disclosure of the information must reasonably be expected to cause the entity commercial injury.") (internal citations and quotation marks omitted); *Continental*, 150 B.R. at 340 (noting failure to provide specific legal authority supporting conclusion that material at issue was properly classified as "defamatory," "a term which is well-defined under the common law"); *Neal*, 461 F.3d at 1054 (stating that to establish matter was "scandalous," interested party must show more than injury to reputation, as court must evaluate "whether a reasonable person could alter their opinion of [d]efendants based on the statements therein, taking those statements in the context in which they appear").

longstanding common law principles in exercising discretion under § 107(c) is not erroneous, as § 107 codifies the common law right of access. *See generally Evans v. United States*, 504 U.S. 255, 259-60 (1992) (Congress may codify common law and, when it does so, common law principles inform application of statute); *Carter v. Hewitt,* 617 F.2d 961, 968 n.6 & 969 n.8 (3d Cir. 1980) (considering common law in interpreting Federal Rules of Evidence where rules were codifications of common law); *see also Milwaukee v. Illinois and Michigan*, 451 U.S. 304, 317 (1981) (where federal rule creates different scheme than common law, common law is abrogated).

The 2019 Orders required the Bankruptcy Court to evaluate Appellants' purpose, and § 107(c) authorized the Bankruptcy Court to exercise its discretion to impose appropriate protections. The Bankruptcy Court's reference to Third Circuit cases that balanced public and private interests under the common law is not inconsistent with its § 107(c) analysis.

**H.     Restrictions Imposed by the Bankruptcy Court**

Having found Appellants had a presumptive right to access the 2019 Exhibits, that such Exhibits include personally-identifying information the disclosure of which poses a risk of identity theft or other injury, and that Appellants had a proper purpose for seeking access, the Bankruptcy Court appropriately next considered whether and what additional protections were required before granting Appellants access under § 107(c). These restrictions are: (i) Appellants may only share the information in the 2019 Exhibits with the NARCO Trust in an aggregate format and may not share the identity of individuals by name or other identifying means; (ii) Appellants' access will be limited to a three-month period, and they must destroy the 2019 Exhibits at the conclusion of their work, consistent with the Protocol Order; (iii) Appellants' efforts will be at their own expense; and (iv) the Bankruptcy Court will appoint someone to

oversee production of the 2019 Exhibits, whose costs will be borne by Appellants. *See Access Decision*, 560 B.R. at 237.

Appellants argue that restrictions imposed by the Bankruptcy Court pursuant to § 107(c) "must (i) bear a causal relationship to the undue risk of identity theft or other unlawful injury created by the potential disclosure and (ii) be tailored to the extent necessary to mitigate such risks." (*Id.* at 44-45 (citing *In re Creighton*, 490 B.R. 240, 245 (Bankr. N.D. Ohio 2013)) Appellants contend that the Bankruptcy Court's protections do not satisfy these standards. (*Id.* at 45) Appellees counter that the Bankruptcy Court has wide discretion under § 107 to protect individuals' information. (*See* D.I. 22 at 31) "When protection is required under § 107, the Court has discretion in deciding *how* to protect . . . information as § 107 does not mandate sealing – only protection." *Anthracite*, 492 B.R. at 180 (internal citation omitted).

The Court agrees with Appellees. The Bankruptcy Court did not abuse its discretion in adopting the additional protections it imposed as conditions of Appellants' access to the 2019 Exhibits. The restrictions were consistent with what this Court imposed in *Garlock*.

Appellants are not well-positioned to meet their burden to show that any of the restrictions on access are the result of an abuse of discretion because they did nothing to help inform the Bankruptcy Court's exercise of its discretion. As Appellants' position was that everyone should be given unlimited, unrestricted access, they did not advocate any restrictions. Under these circumstances, the Bankruptcy Court did not abuse its discretion.

In particular, the Bankruptcy Court did not abuse its discretion in limiting access to Honeywell and Ford, the only entities that have moved for access, which is entirely consistent with the 2019 Orders and is the process that has been followed for all access requests. (*See* A384, 10/14/16 Hr'g. Tr. at 53) Nor was there any abuse of discretion in limiting Appellants'

36

use of the 2019 Exhibits to sharing with the NARCO Trust, as this was the only proper purpose Appellants identified for having access to these materials. With respect to the three-month time limit on Appellants' access to the 2019 Exhibits, there was also no abuse of discretion. While the Bankruptcy Court did not expressly state the basis for imposing this limitation, there is also no basis in the record to make any finding as to what amount of time (presumably longer than three months) Appellants would need to accomplish the purpose for which the Bankruptcy Court provided access. (*See* Tr. at 26-29) (Appellants agreeing they proposed no alternative time limit)

Finally, there was also no abuse of discretion in imposing on Appellants, as the parties seeking access, any costs that may arise with implementing the limited access approved by the Bankruptcy Court, particularly any costs related to review and redaction of the 2019 Exhibits. *See* Access Decision, 560 B.R. at 237. As Appellants are now seeking access only to the same materials that have already been redacted and processed and provided to Garlock (*see* Tr. at 117), it is likely that any additional costs will be minimal (and it appears Appellants may anyway be willing to pay them, *see* A366-67). Whatever the costs, they would not have been incurred by anyone were it not for the fact that Appellants have – appropriately, under § 107(c) – been granted access **not** to the full and complete 2019 Exhibits as submitted to the Bankruptcy Court but to redacted versions.[25]

---

[25] While § 107(a) provides that, "***except*** as provided in subsections (b) and (c)," papers filed in a bankruptcy case "are open to examination by an entity at reasonable times ***without charge***," 11 U.S.C. § 107(a), Appellants have not been granted access to the papers that were submitted to the Bankruptcy Court but, instead, to revised and redacted versions of those papers. This restricted access is being provided pursuant to § 107(c), rendering the "without charge" provision of § 107(a) inapplicable. While the Bankruptcy Court had discretion to, nonetheless, impose these costs on other entities – the lawyers who filed the 2019 Exhibits, perhaps because they should have provided less personal-identifying information in 2004 and 2005 when they submitted the Exhibits (*see* D.I. 16 at 47 n.19); or the debtors in the Consolidated Cases, although their cases are closed (*see* D.I. 21, 37); or the Court itself, for purportedly "failing" to screen the thousands

The Bankruptcy Court did not abuse its discretion.[26]

## I.    First Amendment

In this Court, Appellants argue that the Bankruptcy Court erred by failing to analyze

whether they have a First Amendment right of access to the 2019 Exhibits. (*See* D.I. 16 at 61-

69; *see also* Tr. at 17-18 (citing bases for having raised First Amendment below)) In its motion

for access, Honeywell included a footnote stating: "[t]he First Amendment is another legal basis

in support of the right to access public records, and may provide even more robust protection."

(A13 at n.5) It also asserted that the Third Circuit "has not yet defined the scope of the First

Amendment protection of access to civil proceedings." *Id.* Beyond this passing mention,

Honeywell did not support any claim for access under the First Amendment. *See Laborers' Int'l*

*Union v. Foster Wheeler Corp.,* 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a

party raises it in its opening brief, and for those purposes a passing reference to an issue will not

suffice to bring that issue before this court.") (internal citations and quotations omitted). The

only other place the First Amendment was mentioned was a passing reference at oral argument

before the Bankruptcy Court. (*See* A369-70, A386, 10/14/16 Hr'g. Tr. at 38-39, 55) However,

in that instance, Appellants were arguing the First Amendment's protections against prior

restraints, a severable legal concept from an alleged First Amendment right to access in the first

place. (*Id.* at 38-39 ("MS. SIEG: That's correct, and for good reason, Your Honor. If the order

---

of Exhibits to ensure they were not overly-disclosing personal information – there was no abuse
in imposing these costs on the parties necessitating the work and seeking the access.

[26] In finding no abuse of discretion, the Court is also not restricting the Bankruptcy Court's
discretion, including as these cases move forward. That is, it would be within the Bankruptcy
Court's discretion to modify the restrictions it imposed should it believe circumstances warrant
doing so or should the Court decide it wishes to provide Appellants another opportunity to
propose alternative restrictions. These are matters left to the Bankruptcy Court.

were restricted to Honeywell and Ford that would constitute *a prior restraint on speech*."
(emphasis added)) [27]

The Court agrees with Appellees that Appellants waived their First Amendment
argument by limiting their discussion of it in the Bankruptcy Court to a one-sentence statement
buried in a footnote. "Generally, the Court will not consider arguments that were not presented
to the Bankruptcy Court, as the Bankruptcy Court has not had a chance to consider them."
*Garlock*, 488 B.R. at 294 n.9. Accordingly, the Court does not consider Appellants' First
Amendment argument.

### J.    Cross-Appeal

Cross-Appellants argue that the Bankruptcy Court should not have granted any access to
to Appellants because their admitted purposes are improper. (*See* D.I. 22 at 58-64) For the
reasons stated above, the Court disagrees. Appellants articulated a proper purpose. Therefore,
again, the Court will affirm the Bankruptcy Court's Order.

## IV.    CONCLUSION

The Bankruptcy Court entered the 2019 Orders in 2004, based on its supervisory power
over its own records, its ability to tailor the requirements of Bankruptcy Rule 2019, its equitable
powers under § 105(a), and, later, the discretion granted by Congress in § 107(c). The 2019
Orders are not, at this point, appealable. The 2019 Orders implemented certain procedures to

---

[27] The prior restraint argument was arguably not waived. (*See* D.I. 16 at 47-53) Even assuming
this argument was adequately preserved, it lacks merit, for reasons including that the 2019
Exhibits are not and have never been public, Appellants do not possess the materials, and they do
not have an unfettered constitutional right to access them. A prior restraint exists only "when
information . . . [a person] *possesses* is subjected to 'restraints on the way in which the
information might be used' or disseminated." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 568-70
(2011) (emphasis added) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32 (1984)); *see
also* D.I. 22 at 49-53

protect the privacy of individuals involved in the Consolidated Cases. Those protections included filing the 2019 Exhibits with the Clerk and requiring a party seeking access to file a motion and explain why access was sought. In determining that Appellants should be granted access to the 2019 Exhibits, the Bankruptcy Court properly looked to the Appellants' asserted purpose, as required by the 2019 Orders. The Bankruptcy Court committed no error of law.

In determining that the 2019 Exhibits contain information coming within § 107(c), the Bankruptcy Court found that the 2019 materials included identifying information – including full social security numbers and private medical information. These findings were not clearly erroneous. In determining that unlimited disclosure of the 2019 Exhibits presented an undue risk of unlawful injury, as contemplated by § 107(c), the Bankruptcy Court identified the disclosure of personal identifiers and private medical information as posing such a risk. Again, this finding was not clearly erroneous.

In imposing restrictions on Appellants' access to the 2019 Exhibits, the Bankruptcy Court acted consistent with its authority. It did not abuse its discretion.

Accordingly, the Court will affirm the Bankruptcy Court's Access Decision.